UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
ST. CLAIR SHORES GENERAL EMPLOYEES      x
RETIREMENT SYSTEM,                      x      06 Civ. 688 (SWK)
                                        x
              Plaintiff,                x      **OPINION AND ORDER**
                                        x
              -against-                 x
                                        x
PAUL EIBELER, et al.                    x
                                        x
              Defendants.               x
----------------------------------------X

**SHIRLEY WOHL KRAM, U.S.D.J.**

This litigation comes before the Court on a motion filed by the Special Litigation Committee (the "SLC") of the board of directors of Take Two Interactive Software, Inc. ("Take Two"), a Delaware corporation headquartered in New York. The Amended Complaint (the "Complaint") filed by the plaintiff, St. Clair Shores General Employees Retirement System ("St. Clair" or "Plaintiff"), avers three basic causes of action. First, the Complaint asserts derivative claims against various officers and directors in connection with alleged insider trading (the "Derivative Insider Trading Claims"). Second, the Complaint advances derivative claims against several officers and directors who allegedly issued materially misleading proxy statements in the years 2003, 2004, and 2005, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 (the "Derivative Section 14(a) Disclosure Claims"). Third, the

Complaint sets forth direct, class action claims for injuries suffered by St. Clair and other holders of Take Two common stock as a result of the allegedly misleading proxy statements of the years 2003, 2004, and 2005 (the "Direct Common Law Disclosure Claims"). The SLC has moved to stay these three causes of action while it considers whether this litigation is in the best interests of Take Two.

For the reasons that follow, this court grants the SLC's motion and stays this litigation in its entirety for a period of 150 days.

## I.    The Allegations of the Complaint

The Complaint names Take Two and eleven of its officers and directors as defendants. The Complaint alleges that the officer and director defendants: (A) engaged in insider trading and (B) violated disclosure requirements under Exchange Act Section 14(a), Rule 14a-9, and Delaware law.

### A. The Derivative Insider Trading Claims

Plaintiff avers two separate episodes of insider trading. In both instances, directors and officers of Take Two allegedly sold shares of Take Two while in possession of material non-public information concerning the corporation.

The first alleged episode of insider trading involved the sale of Take Two common stock by certain officer and director defendants between June and November 2003. The Complaint alleges

that these defendants sold 465,000 shares of Take Two stock at a time when they knew that the SEC would likely bring an enforcement action for Take Two's revenue overstatements in the years 2000 and 2001.

The second alleged episode of insider trading involved the sale of Take Two common stock by certain officer and director defendants between March and July 2005. The Complaint alleges that these defendants sold 573,000 shares of Take Two common stock while aware that Take Two's best selling video game, Grand Theft Auto San Andreas ("San Andreas"), contained hidden, sexually explicit content, which would negatively impact its marketability.

In order to remedy these alleged instances of insider trading, the Complaint seeks disgorgement of profits realized by the defendants through their sale of Take Two stock at inflated values.

## B. The Disclosure Claims

In addition to the Derivative Insider Trading Claims, Plaintiff asserts that the defendants violated their disclosure duties by filing materially misleading proxy statements over the past several years (the "Disclosure Claims"). The crux of these claims is that certain defendants caused proxy statements to be filed in February 2003, May 2004, and May 2005, while failing to disclose material information to the shareholders. In connection

with these allegedly misleading proxy statements, Take Two shareholders approved the issuance of five million additional shares for Take Two's employee stock option plans.

In order to remedy the harm caused by the proxy statements in question, Plaintiff asserts two types of claims. First, in its Derivative Section 14(a) Disclosure Claims, Plaintiff seeks an award of compensatory damages for Take Two. Second, in its Direct Common Law Disclosure Claims, Plaintiff seeks an award of damages to the class for any harm caused by the allegedly misleading proxy statements.

## II.  Discussion

After this litigation was commenced, Take Two's board of directors appointed the SLC to investigate whether litigation was in Take Two's best interests. The SLC now moves the Court to stay all proceedings for a period of 150 days in order to facilitate the conduct of its investigation.

### A. Choice of Law

Regardless of whether the underlying cause of action arises under federal or state law, "federal courts should apply state law governing the authority of independent directors to discontinue derivative suits to the extent such law is consistent with [federal law]." Burks v. Lasker, 441 U.S. 471, 486 (1979). Therefore, the appropriateness of the SLC's motion for a stay is a question to be resolved under the law of Take

Two's state of incorporation, Delaware. See, e.g. Stein v. Bailey, 531 F. Supp. 684, 691-93 (S.D.N.Y. 1982) (applying Delaware law in determining whether to defer to special litigation committee's decision not to pursue derivative litigation).

**B. The SLC's Entitlement to a Stay of Derivative Litigation**

Under Delaware law, a properly formed special litigation committee of the board of directors is generally entitled to a stay of derivative litigation for the reasonable period of time necessary to complete its investigation. See Biondi v. Scrushy, 820 A.2d 1148, 1163-64 (Del. Ch. 2003); Kaplan v. Wyatt, 484 A.2d 501, 510 (Del. Ch. 1984); Abbey v. Computer & Commc'ns Tech., 457 A.2d 368, 375-76 (Del. Ch. 1983). In fact, Delaware courts have declined to grant such a stay only in unusual circumstances. See, e.g., Biondi, 820 A.2d at 1165-66 (refusing to grant stay because special litigation committee in question was obviously biased and thus its decision seeking termination of action could not command respect); Carlton Invs. v. TLC Beatrice Int'l Holdings, Inc., No. CIV.A. 13950, 1996 WL 33167168, at *2, *9 (Del. Ch. June 6, 1996) (refusing to grant stay because substantial discovery and motion practice had already occurred).

Therefore, to the extent that Plaintiff advances derivative claims (see Compl. ¶¶ 104-26), the SLC's motion for a stay is

well supported by Delaware law. Specifically, St. Clair does not allege the type of unusual circumstances in which a stay of discovery is inappropriate. See Biondi, 820 A.2d at 1165-66; Carlton Invs., 1996 WL 33167168, at *2, *9. Moreover, contrary to St. Clair's assertions, the SLC need not meet any special burden of proof before a stay of derivative proceedings is warranted. Rather, the propriety of a stay is presumed under Delaware law. Abbey, 457 A.2d at 375; Kaplan, 484 A.2d at 510. Consequently, the Derivative Insider Trading Claims must be stayed.

Nonetheless, St. Clair argues that the SLC lacks standing to seek a stay of the Disclosure Claims. In doing so, St. Clair correctly notes that a special litigation committee's authority derives directly from the board's authority to decide whether derivative litigation should be pursued on behalf of the corporation. See Zapata Corp. v. Maldonado, 430 A.2d 779, 786 (Del. 1981). St. Clair reasons that where a given suit is not subject to the demand requirement or is otherwise outside the purview of the board's managerial power, see Aronson v. Lewis, 473 A.2d 805, 814 (Del. 1984), overruled on other grounds by Brehm v. Eisner, 746 A.2d 244, 253-54 (Del. 2000), a special litigation committee is similarly powerless to affect the progression of that suit. With this reasoning in mind, St. Clair argues that the Derivative Section 14(a) Disclosure Claims are

not within the SLC's power to investigate because derivative claims brought under Section 14(a) are a species of derivative claim not subject to the demand requirement and business judgment rule. In addition, St. Clair contends that the Direct Common Law Disclosure Claims are outside the bounds of the SLC's investigatory powers because they are not derivative in nature, and are thus not governed by the demand requirement and business judgment rule.

The merits of these contentions are addressed in the following sections. In the first instance, the Court finds that the Derivative Section 14(a) Disclosure Claims are subject to the demand requirement and within the SLC's power to investigate, and thus Delaware law requires that such claims be stayed while the SLC conducts its investigations.[1] In the second instance, the Court reasons that there is a significant doubt as to whether St. Clair can bring derivative and direct claims arising out of the same alleged wrongdoing in the same action. As a result, there is no need to address whether the Direct

---

[1] In finding that the Derivative Section 14(a) Disclosure Claims are subject to the demand requirement, the Court does not pass judgment on whether Plaintiff has adequately pleaded demand futility or, in the alternative, its efforts to make a demand on the board. Instead, the Court merely concludes that Plaintiff would have to show either demand futility or adequate efforts to make a demand on the board, in order to proceed with its Derivative Section 14(a) Disclosure Claims, and thus a stay of the instant litigation is warrant. Plaintiff's position is that a stay is not warrant because no such showing is required.

Common Law Disclosure Claims are within the SLC's investigatory reach. Rather, for the purposes of Plaintiff's motion for a stay the Complaint will be read as if it only avers derivative claims, all of which are within the reach of the SLC's investigation.

### 1. The SLC's Standing to Investigate Derivative Section 14(a) Disclosure Claims

As a general matter, the board of directors has primary authority to decide whether a corporation should pursue derivative litigation. See Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 101 (1991); Spiegel v. Buntrock, 571 A.2d 767, 773 (Del. 1990). In order to ensure that the board can exercise its primary authority to control derivative litigation, Delaware law requires that shareholders make a demand on the board before initiating a derivative suit. Spiegel, 571 A.2d at 773. Furthermore, in recognition of the board's primary authority, Delaware law applies the business judgment rule to board decisions concerning the initiation of derivative litigation, presuming that the board acted on an informed basis, in good faith, and in the honest belief that the decisions were in the corporation's best interests. Id. at 773-74.

There is nothing on the face of Delaware's demand requirement and business judgment rule that precludes their application to derivative claims brought under Section 14(a).

See <u>id.</u>; Chancery Court R. 23.1. Nonetheless, some courts have deviated from tradition when considering derivative suits that allege Section 14(a) claims, with the result that there is some controversy regarding the applicability of the demand requirement and business judgment rule to Section 14(a) claims.[2]

While acknowledging the existence of this controversy, the Court is not persuaded that Section 14(a) claims should be treated as a special species of derivative claim not subject to the demand requirement and business judgment rule. Specifically, arguments in favor of the special treatment of derivative Section 14(a) claims generally rest on two lines of reasoning with which the Court disagrees. First, one court in this district has concluded that Second Circuit case law precludes the application of the demand requirement and business judgment rule to claims brought under Section 14(a). <u>See, e.g.</u>, <u>Vides v.</u>

---

[2] <u>Compare</u> <u>Lewis v. Graves</u>, 701 F.2d 245, 247-50 (2d Cir. 1983) (dismissing derivative suits brought under Sections 10(b) and 14(a) of the Exchange Act due to plaintiff's failure to make demand on board); <u>Fink v. Weill</u>, No. 02 Civ. 10250(LTS), 2005 WL 2298224, at *4 (S.D.N.Y. Sep. 19, 2005) (dismissing derivative suit brought under Section 14(a) for failure to make demand); <u>In re Trump Hotels S'Holder Derivative Litig.</u>, Nos. 96 Civ. 7820 DAB, 96 Civ. 8527 DAB, 2000 WL 1371317, at *10 n.5 (S.D.N.Y. Sep. 21, 2000) (reasoning that demand requirement applies to Section 14(a) claims that are brought derivatively), <u>with</u> <u>Vides v. Amelio</u>, 265 F. Supp. 2d 273, 275-76 (S.D.N.Y. 2003) (holding that demand requirement does not apply to Section 14(a) claims because content of proxy-statement disclosures is not within board's business judgment); <u>Katz v. Pels</u>, 774 F. Supp. 121, 127 (S.D.N.Y. 1991)(holding that "demand is not required, nor required shown futile" in Section 14(a) case).

Amelio, 265 F. Supp. 2d 273, 276 (S.D.N.Y. 2003). Second, working from the premise that the materiality of proxy statement disclosures is largely a legal issue, some courts have drawn the unwarranted conclusion that the pursuit of derivative Section 14(a) litigation is not within the board's business judgment. See, e.g., id. at 275-76; In re Tri-Star Pictures, Inc., Litig., CIV. A. No. 9477, 1990 WL 82734, at *8 (Del. Ch. June 14, 1990).

In the following sections, the Court will set forth the reasons for its disagreement with these two general arguments. The Court will then conclude that Section 14(a) derivative claims are, like other derivative claims, subject to the demand requirement and business judgment rule. Consequently, the Derivative Section 14(a) Disclosure Claims must be stayed while the SLC conducts its investigation.

### a. Second Circuit Case Law on Demand Requirement and Business Judgment Rule in Section 14(a) Litigation

The Second Circuit's most extensive treatment of the applicability of traditional rules of derivative litigation to Section 14(a) claims occurred in Galef v. Alexander, 615 F.2d 51 (2d Cir. 1980). Galef considered the narrow issue of whether the directors of a corporation were entitled to summary judgment on claims brought under Section 14(a) where the board, all of whose members were named defendants in the suit, decided that the suit was not in the corporation's best interests. Id. at 64. Not

surprisingly, the Second Circuit held that where a claim has been stated against directors under Section 14(a), federal policy precludes the application of the business judgment rule to the decision of those very same directors to terminate litigation. Id. This ruling is consistent with traditional rules governing derivative litigation, under which no deference is owed to board decisions concerning the termination of litigation if a majority of board members are interested in the litigation. See, e.g., Zapata, 430 A.2d at 784. However, Galef explicitly reserved judgment on the general question of whether the business judgment rule would apply to decisions to dismiss made by a disinterested board or an independent committee of the board. 615 F.2d at 64 n.20.[3] Therefore, Galef does require the modification of traditional understandings of the demand requirement and business judgment rule in the context of Section 14(a) litigation.

Moreover, subsequent Second Circuit jurisprudence belies the claim that such modification is compelled by federal policy. Specifically, in Lewis v. Graves, the Second Circuit dismissed Section 14(a) claims for failure to make a demand, which makes clear that demand is required in this context. 701 F.2d 245, 249

---

[3] In reserving judgment, the Second Circuit cited Lewis v. Anderson, 615 F.2d 778, 784 (9th Cir. 1979) ("So long as those accused of manipulating the proxy vote are excluded from deciding whether or not to pursue the claim there is no conflict between the business judgment rule and § 14(a).").

(2d. Cir. 1983). Since "[t]he purpose of the demand requirement is to afford the directors an opportunity to exercise their reasonable business judgment," Kamen, 500 U.S. at 96 (quotations omitted), the holding in Lewis v. Graves suggests that the business judgment rule is equally applicable to board decisions regarding the pursuit of Section 14(a) claims. In fact, if board decisions on the pursuit of litigation did not enjoy the benefit of the business judgment rule, the rationales underlying the demand requirement would be largely undermined. Specifically, the board would be given an initial decision-making opportunity by operation of the demand requirement, but, in the absence of the business judgment rule, this initial decision-making opportunity would be of little significance because courts and shareholders could conduct a de novo review of the propriety of board decisions.

Consequently, Second Circuit jurisprudence has clearly held the demand requirement applicable to derivative Section 14(a) litigation, which implies that the business judgment rule should be similarly applicable. See also In re Par Pharm. Inc. Derivative Litig., 750 F. Supp. 641, 645-47 (S.D.N.Y. 1990); Stein v. Bailey, 531 F. Supp. at 695-96; Abramowitz v. Posner,

513 F. Supp. 120, 130 (S.D.N.Y. 1981). Thus, Second Circuit case

law supports the SLC's request for a stay.[4]

> **b. Compliance or Noncompliance with Disclosure Requirements Is a Matter of Law But Decision to Litigate Is a Business Decision**

It may be accepted that a director's decision concerning

what information should be included in a proxy statement is not

entirely protected by the business judgment rule. See In re

Anderson, Clayton S'holders' Litig., 519 A.2d 669, 675 (Del. Ch.

1986). For example, a director's decision to include materially

misleading declarations or omissions in a proxy statement in

---

[4] The Second Circuit has noted one reason why demand might be required in a given case even if the business judgment rule would not apply. In particular, requiring demand in such situations preserves the board's opportunity to take control of litigation brought on behalf of the corporation, see Galef, 615 F.2d at 59, even if no deference will be paid to board decisions to dismiss. Although this reasoning suggests that there might be limited circumstances in which demand is required but the business judgment rule does not apply, it nonetheless supports the conclusion reached by this Court that the SLC is entitled to a stay. Specifically, in requesting a stay, the SLC is asking for an initial opportunity to determine whether the board should take over the instant litigation, not demanding that the Court defer to its eventual decision, whatever that may be. The SLC is entitled to this initial decision-making opportunity under the logic of Lewis, which held the demand requirement applicable to Section 14(a) litigation, and Zapata, which held that the board may delegate its decision-making authority to an independent committee where the board is interested. Thus, even if the Second Circuit were to find subsequently that the business judgment rule is inapplicable to Section 14(a) claims, Second Circuit case law supports the SLC's request for a stay.

Nonetheless, as the following sections demonstrate, there is ample reason to conclude, as this Court does, that the business judgment rule applies to Section 14(a) litigation, even if Second Circuit case law is silent on this matter. See Galef, 615 F.2d at 64 n.20.

contravention of federal and state law would presumably be evaluated without the presumption of propriety afforded by the business judgment rule. See id. In addition, a board's decision as to whether a particular statement or omission was materially misleading would also be denied the protection of the business judgment rule because this decision involves a question of materiality, which courts are well suited to answer on their own. Vides, 265 F. Supp. 2d at 275. In sum, a board's decision that a particular proxy statement did or did not satisfy federal and state disclosure requirements is presumably not entitled to any special respect in a court of law. However, this is no reason to conclude, as some courts have, that a board's decision as to whether the corporation should pursue derivative litigation to vindicate violations of federal and state disclosure requirements is not entitled to the protection of the business judgment rule. See id. at 275; In re Tri-Star Pictures, Inc. Litig., 1990 WL 82734, at *8.

To the contrary, it is axiomatic that "decisions of a corporation--including the decision to initiate litigation--should be made by the board of directors." Kamen, 500 U.S. at 101 (quotations omitted); see also Spiegel, 571 A.2d at 773. So, although the board may not be best positioned to determine whether Section 14(a) has been violated, the law regards the board as best positioned to make the *business* decision as to

whether derivative litigation should be initiated to remedy such a potential violation. In fact, even if Section 14(a) has been violated, the board might reasonably determine that it is not in the best interests of the corporation to pursue derivative litigation. For example, it might cost the corporation more to enforce its rights under Section 14(a) than the corporation could possibly recover through the successful prosecution of a lawsuit. On the other hand, should the board find that Section 14(a) litigation is in the best interests of the corporation, the law regards the board as best situated to determine how resources should be spent on that litigation. The business judgment rule is simply a means to acknowledge that the board is better positioned to weigh the comparative risks and benefits of the initiation and conduct of litigation than is a court. See Spiegel, 571 A.2d at 773 ("The purpose of pre-suit demand is to assure that the stockholder affords the corporation the opportunity to address an alleged wrong without litigation, to decide whether to invest the resources of the corporation in litigation, and to control any litigation which does occur.").

Therefore, the business judgment rule should apply to board decisions regarding the pursuit of derivative Section 14(a) litigation, provided the relevant decision makers are not interested in the transaction in question. Moreover, since the demand requirement merely recognizes the board's privileged

position by providing it with an initial decision-making opportunity, Kamen, 500 U.S. at 96, the demand requirement should also be applied to Section 14(a) litigation. See Lewis, 701 F.2d at 249.

### c. The SLC Has Standing to Investigate the Derivative Section 14(a) Disclosure Claims

In consequence, the Court declines Plaintiff's invitation to deviate from traditional rules governing derivative litigation by holding the demand requirement and business judgment rule inapplicable in the specific context of Section 14(a) litigation. Specifically, as the foregoing discussion demonstrates, the Court finds unpersuasive the reasoning that has been used to justify such deviation from tradition.

As a result, this Court concludes that derivative claims brought under Section 14(a) are subject to the demand requirement and the decision as to whether to bring such claims is within the board's business judgment. Cf. Lewis, 701 F.2d at 249; Fink v. Weill, No. 02 Civ. 10250(LTS), 2005 WL 2298224, at *4 (S.D.N.Y. Sep. 19, 2005); In re Trump Hotels S'Holder Derivative Litig., Nos. 96 Civ. 7820 DAB, 96 Civ. 8527 DAB, 2000 WL 1371317, at *10 n.5. Furthermore, where demand is excused because the plaintiff alleges with particularity that a majority of the board is tainted by self-interest, the board may appoint a committee of independent directors to determine whether

derivative Section 14(a) litigation is in the corporation's best interests. See Zapata, 430 A.2d at 786.

In the instant case, the Derivative Section 14(a) Disclosure Claims are indisputably derivative in nature and thus are subject to the demand requirement and business judgment rule. Moreover, the SLC is allegedly an independent committee established to investigate the desirability of pursuing such Claims. Therefore, Plaintiff's Derivative Section 14(a) Disclosure Claims are within the SLC's investigatory reach, and these Claims must be stayed while the SLC conducts its investigations. Abbey, 457 A.2d at 375; Kaplan, 484 A.2d at 510.

### 2. The SLC's Standing to Investigate St. Clair's Direct Common Law Disclosure Claims

The Direct Common Law Disclosure Claims are mirror images of the Derivative Section 14(a) Disclosure Claims. In fact, the only differences between these Claims are the labels St. Clair attaches to them and the entity identified as the injured party.[5] The underlying wrongful conduct pleaded by St. Clair, i.e., the presence of material omissions in the 2003, 2004, and 2005 proxy statements, is exactly identical. Essentially, then, St. Clair

---

[5] St. Clair refers to the Direct Common Law Disclosure Claims as "Class Claim[s] for Breach of Fiduciary Duty", while referring to the Derivative Section 14(a) Disclosure Claims as "Derivative Action[s] for Violation[s] of Section 14(a)". Similarly, St. Clair identifies the Class as the injured party in connection with the former Claims, while identifying Take Two as the injured party in relation to the latter.

seeks to vindicate its own interests by demanding recovery for the Class, while also attempting to represent the interests of Take Two by requesting damages for the corporation in connection with the same alleged wrongdoing. The Court finds significant cause to doubt that St. Clair can adequately advance these dual interests, and thus concludes that the Direct Common Law Disclosure Claims should be treated as derivative claims for the purposes of this motion.

Courts in this Circuit have long found that plaintiffs attempting to advance derivative and direct claims in the same action face an impermissible conflict of interest. See, e.g., Tuscano v. Tuscano, 403 F. Supp. 2d 214, 223 (E.D.N.Y. 2005); Wall Street Sys., Inc. v. Lemence, No. 04 Civ. 5299(JSR), 2005 WL 292744, at *3 (S.D.N.Y. Feb. 8, 2005); Ryan v. Aetna Life Ins. Co., 765 F. Supp. 133, 136 (S.D.N.Y. 1991); Brickman v. Tyco Toys, Inc., 731 F. Supp. 101, 108 (S.D.N.Y. 1990); Kamerman v. Steinberg, 113 F.R.D. 511, 515-16 (S.D.N.Y. 1986). As a result of this impermissible conflict, some courts have refused to certify a plaintiff as a class representative, while others have refused to allow the derivative action to proceed. Compare Brickman, 731 F. Supp. at 109, with Ryan, 765 F. Supp. at 137.

In deciding whether to eliminate the conflict of interest by treating the claims as exclusively derivative or exclusively direct, courts have scrutinized the plaintiff's allegations.

-18-

See Tuscano, 403 F. Supp. 2d at 223; Moran v. Household Intn'l.,
Inc., 490 A.2d 1059, 1069 (Del. Ch. 1985) ("In determining
whether a complaint states an individual or a derivative cause
of action, the Court is not bound by the designation employed by
the plaintiff."), abrogated on other grounds by Tooley v.
Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031, 1035-40 (Del.
2004); Dieterich v. Harrer, 857 A.2d 1017, 1027 (Del. Ch. 2004)
("[T]he court must look to all the facts of the complaint and
determine for itself whether a direct claim exists." ).

    In the instant case, the Direct Common Law Disclosure
Claims fundamentally allege that the defendants issued
materially misleading proxy statements in violation of Section
14(a) of the Exchange Act. Although such claims may be brought
both derivatively and directly, see Katz v. Pels, 774 F. Supp.
121, 127 (S.D.N.Y. 1991), the Supreme Court has stated that
"[t]he injury which a stockholder suffers from corporate action
pursuant to a deceptive proxy solicitation ordinarily flows from
the damage done the corporation, rather than from the damage
inflicted directly upon the stockholder." J.I. Case Co. v.
Borak, 377 U.S. 426, 432 (1964). In accord with the Supreme
Court's generalization, Take Two is the entity that has suffered
the primary injury in this case--the addition of a combined five
million shares to Take Two's 2002 Stock Option Plan. (Compl. ¶¶
116, 121, 126.) Indeed, even if St. Clair successfully

prosecuted its direct claim for injuries to its right to cast an informed vote, St. Clair might only be entitled to nominal damages. See In re Tri-Star Pictures, Inc., Litig., 634 A.2d 319, 334 n.18 (Del. 1993).

Moreover, a direct claim for failure to disclose material information in connection with the solicitation of shareholder action can only succeed if the solicited corporate transaction "in turn caused impairment to the economic or voting rights of stockholders." Loudon v. Archer-Daniels-Midland Co., 700 A.2d 135, 142 (Del. 1997). Since the addition of five million shares to the Stock Option Plan does not clearly affect Plaintiff's economic or voting rights, it may be difficult for Plaintiff to maintain a direct action for the alleged material omissions in the 2003, 2004, and 2005 proxy statements. See id.; Paskowitz v. Wohlstadter, 822 A.2d 1272, 1280 (Md. App. 2003). Therefore, Plaintiff's Disclosure Claims are primarily derivative in nature. See Tooley, 845 A.2d at 1033 (indicating that the classification of a suit as derivative or direct turns on "who suffered the alleged harm . . ." and "who would receive the benefit of any recovery or other remedy").

Given that an impermissible conflict of interest may prevent Plaintiff from advancing its derivative and direct disclosure claims in the same action, and that Plaintiff's Direct Common Law Disclosure Claims are primarily derivative in

nature, the Court will treat these disclosure claims as derivative for the purposes of the present motion to stay. Cf. Tuscano, 403 F. Supp. 2d at 223. For the reasons stated in the preceding section concerning the Derivative Section 14(a) Disclosure Claims, the SLC has standing to investigate these additional disclosure claims.

Therefore, although it is improper at this juncture to dismiss the Direct Common Law Disclosure Claims outright, cf. Brickman, 731 F. Supp. at 104, the Court finds that all of the Disclosure Claims should be stayed while the SLC conducts its investigations. Abbey, 457 A.2d at 375-76; Kaplan, 484 A.2d at 510.

### III. Conclusion

The Court grants the SLC's motion to stay this litigation in its entirety. Although the SLC is entitled to a stay for the reasonable period of time necessary to complete its investigation, Abbey, 457 A.2d at 375-76, the SLC has requested a stay of 150 days. The Court has no reason to conclude that this period of time is unreasonable, and thus finds that a stay of 150 days dating from the entry of this Order is warranted.

However, when the SLC has terminated its investigation, the stay must be lifted. Id. at 375. Thus, should the SLC finish its investigation before 150 days have expired, proceedings in this case must commence. On the other hand, should the SLC desire an

additional stay of the proceedings in this case, the SLC must make a showing of cause in a future application to the Court.

In any event, when the stay in these proceedings has been lifted or has otherwise expired, the defendants will have thirty days to respond to the Complaint, absent any agreement to the contrary between the parties.

SO ORDERED.

SHIRLEY WOHL KRAM
UNITED STATES DISTRICT JUDGE

DATED:    New York, New York
          October 4, 2006

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/4/06

-22-